# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 01 C 58 | **DATE** | 12/11/2002 |
| **CASE TITLE** | Lowe, et al. vs. SRA/IBM Macmillan Pension Plan HRSC-Retirement Plan, S1, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Report and Recommendation. It is recommended that judgment be entered in favor of Plaintiff George Lowe and against Defendants The McGraw-Hill Companies Employee Retirement Plans and the McGraw-Hill Companies, Inc. as set forth in detail in the Report and Recommendation. It is also recommended that Geneva Lowe, SRA/IBM MacMillan Pension Plan and HRSC-Retirement Plan, S-1 be dismissed as parties to this action.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | DEC 12 2002 | |
| | Notified counsel by telephone. | date docketed | 64 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 12/11/2002 | |
| DK | courtroom deputy's initials | date mailed notice | |
| | | DK | |
| | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
DEC 1 2 2002

| | |
|---|---|
| GENEVA LOWE and GEORGE LOWE, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SRA/IBM-MACMILLAN PENSION PLAN ) <br> HRSC-RETIREMENT PLAN, S-1, ) <br> THE MCGRAW-HILL COMPANIES ) <br> EMPLOYEE RETIREMENT PLAN and ) <br> THE MCGRAW-HILL COMPANIES, ) <br> ) <br> Defendants. ) | Case No. 01 C 58 <br><br> Magistrate Judge Morton Denlow |

TO: THE HONORABLE SUZANNE B. CONLON
UNITED STATES DISTRICT JUDGE

## REPORT AND RECOMMENDATION

This matter comes before the Court for the purpose of conducting a hearing and entering a report and recommendation concerning Plaintiff's motion for default judgment and petition for attorney's fees and expenses. The Court conducted an evidentiary hearing on November 20, 2002. The Court has considered the testimony of the three witnesses who testified, the exhibits introduced into evidence and the briefs and arguments of counsel.

The following constitute the Court's findings of fact and conclusions of law. The issues decided include: 1) how much Plaintiff, George Lowe, is entitled to from The McGraw-Hill Companies Employee Retirement Plan (the "Plan"); 2) whether Plaintiff is entitled to recover a statutory penalty from the Plan and its administrator, The McGraw-Hill Companies, Inc. ("McGraw-Hill") for their delay in providing Plan documents to him; and 3) whether Plaintiff is entitled to recover attorney's fees from Defendants in connection with this action.

64

# I. FINDINGS OF FACT

## A. THE PARTIES

1. Plaintiff George Lowe ("Plaintiff" or "Lowe") is the surviving spouse of Geneva Lowe. He testified at the hearing.

2. Geneva Lowe is a former employee of Science Research Associates ("SRA"). Her employment with SRA began on February 17, 1969, and terminated on December 31, 1992. MH 93.[1]

3. Geneva Lowe died on January 2, 1999. MH 95. She is not a party to this litigation even though she is listed as a plaintiff in the caption.

4. Geneva Lowe became a vested employee in the now-combined SRA/IBM-McGraw-Hill Companies Employee Retirement Plan ("SRA Plan") under which she became entitled to certain pension benefits under the SRA Plan. MH 93-94.

5. The SRA Plan became a part of the McGraw-Hill Plan in 1994.

6. In 1994, Defendant McGraw-Hill assumed responsibility for administering the SRA Plan after it was combined with the McGraw-Hill Plan. Patricia Byrne, Manager of Retirement Plans at McGraw-Hill, testified at the hearing.

7. The SRA/IBM-MacMillan Pension Plan and the HRSC-Retirement Plan, S-1, listed in the caption as defendants, no longer exist as separate entities and should not be parties to this litigation.

---

[1] MH refers to McGraw-Hill documents attached to Plaintiff's Request for Admission. PX refers to Plaintiff's exhibits and DX refers to Defendants' exhibits. Plaintiff's Request for Admission is PX 1.

2

8. The only parties to the litigation are George Lowe as Plaintiff and The McGraw-Hill Companies, Inc. ("McGraw-Hill") and The McGraw-Hill Companies Employee Retirement Plan ("Plan") as Defendants. McGraw-Hill is a party defendant in its capacity as plan administrator of the Plan.

**B.   GENEVA LOWE'S TERMINATION FROM SRA**

9. Geneva Lowe's employment with SRA terminated pursuant to an Employment Termination Agreement and General Release ("Termination Agreement"). MH 1-8. Her job was eliminated effective December 31, 1992. MH 9. She received a lump sum severance payment of $24,440. MH 9.

10. Geneva Lowe began collecting monthly benefits from the SRA Plan on January 1, 1993. MH 93-94.

11. The SRA Plan provides that a participant may receive an early retirement benefit if she satisfies any of the following criteria:

    a. Thirty or more years of combined service;
    b. Fifteen or more years of combined service and attainment of age 55;
    c. Five or more years of combined service and attainment of age 62.

Plan ¶ 4.02. MH 31.

12. The amount of early retirement benefits under the SRA Plan is calculated in Plan ¶ 5.02 which uses the definition of Accrued Benefit as set forth in Plan ¶ 1.01. MH 16 and 21.

## C. DETERMINATION OF GENEVA LOWE'S AVERAGE MONTHLY COMPENSATION

13. "Average Monthly Compensation" is one-twelfth of Average Annual Compensation during the five consecutive Plan years producing the highest average. Plan ¶ 1.07. MH 17.

14. SRA Plan Section 1.07 states, in relevant part:

> ANNUAL COMPENSATION means basic compensation, commissions, and recurring payments under any form of variable compensation plan paid to an Employee by the Employer during the calendar year, including, but not limited to, payments for nonscheduled workdays, overtime and shift premiums and Employee-elected tax-deferred contributions under Section 401(k) of the Code, but excluding any Employer contributions (except such Employee-elected tax-deferred contributions under Section 401(k) of the Code) made to any qualified retirement plan of the Employee, special awards, and deferred and accrued vacation payment to retiring and separated vested Employees. Annual compensation shall also include amounts paid to an Employee prior to the Effective Date that were regarded as "compensation" under the IBM Plan.

MH 17.

15. On January 26, 1993, the SRA Plan administrator computed Geneva Lowe's retirement calculation and determined the five consecutive Plan years which combine to produce the highest average annual compensation for Geneva Lowe as follows:

a. 1988: $23,926.60
b. 1989: $24,227.80
c. 1990: $24,966.00
d. 1991: $25,708.56
e. 1992: $26,564.22

MH 93. The SRA Plan administrator did not include the severance payment in making this computation.

16. The severance pay amount of $24,440 does not constitute annual compensation as defined by SRA Plan Section 1.07, and is not to be factored into the Annual Compensation calculation. See discussion at II.C.1 *infra*.

4

17. Geneva Lowe's "Average Annual Compensation" as computed under the terms of the SRA Retirement Plan is $25,078.64. MH 93.

18. Geneva Lowe's Average Monthly Compensation for the five years prior to retirement was $2,089.89. ($25,078.64 ÷ 12). DX 1.

## D. DETERMINATION OF GENEVA LOWE'S YEARS OF CREDITED SERVICE

19. "Credited Service" under the SRA Plan "means the aggregate number of an Employee's years and fractional years of Credited Service with the Employer." Plan ¶ 1.16. MH 18.

20. The Termination Agreement gives the participant five additional years age or service credit (in any combination) for purposes of computing your eligibility for an immediate early retirement benefit under the SRA Retirement Plan. Under the Termination Agreement, the amount of retirement benefits are calculated based upon participant's current age, and in accordance with the SRA Retirement Plan and will be subject to reduction if participant is under age 60. MH 3.

21. "In accordance with the SRA Retirement Plan" means that once it is determined that a participant is eligible, the method for computing benefits will follow ¶ 5.02 of the SRA Plan. MH 3.

22. Adjustment for Early Commencement is based upon a table contained in Plan ¶ 5.02. MH 36. The proper factor from the adjusted for early commencement table is 86% because Geneva Lowe was age 53 years, 11 months, 7 days at the time of early retirement. *Id.* DX 1.

5

23. Geneva Lowe became eligible for early retirement due to the Termination Agreement's grant of five years' additional age or service credit, which brought her up to a credited age of 55. MH 3, MH 93. See discussion at II.C.2 *infra*.

24. At the time of her separation from employment, Geneva Lowe had more than 15 years of credited service. DX 1.

25. Geneva Lowe's actual credited service was 23 years, 10 months, and 14 days, or 23.92 years. DX 1.

26. Geneva Lowe received pension benefits from the SRA Retirement Plan in the gross amount of $883.39 per month beginning January 1, 1993. MH 116.

## E. COMMUNICATIONS BETWEEN PARTIES FOLLOWING GENEVA LOWE'S DEATH

27. On March 11, 1999, The Plan was advised by Annette Bell that Geneva Lowe had passed away on January 2, 1999. MH 95. Annette Bell is the Lowes' daughter and she was the executor of her mother's estate.

28. Geneva Lowe was issued payments in February and March 1999 totaling $1,731.76 following her death. MH 97.

29. On March 24, 1999, the McGraw-Hill Plan administrator wrote to Annette Bell extending condolences and requesting return of the overpayment. MH 118. This money was never returned to the Plan. The Plan Administrator also included a copy of the form by which it asserted that Geneva Lowe elected a single life annuity providing for a monthly pension only during her lifetime. *Id.* MH 137.

30. Plaintiff received a notice from the Social Security Administration indicating that he might be entitled to private pension benefits from the MacMillan McGraw-Hill School Publishing Company Retirement Plan in the amount of $563.57. MH 120-121.

31. In reviewing his wife's papers, Plaintiff discovered a Retirement Processing Data form ("election form") which was signed on November 23, 1992 by Plaintiff and his wife and contained a January 1, 1993 effective date. Comp. Ex. 1.

32. On June 16, 1999, Plaintiff mailed a copy of the Social Security Notice to the McGraw-Hill Plan Administrators requesting that they provide him with the proper claim papers to collect the pension benefits that may be due to him from the Plan. MH 119-21.

33. On June 25, 1999, Jana J. Bittner ("Bittner"), Coordinator of Retirement Plans for McGraw-Hill, responded to Plaintiff to inform him that Geneva Lowe had elected a single life annuity at the time of her retirement that only provided a monthly pension to her for her lifetime. MH 122. The letter invited Plaintiff to call if he had further questions. *Id.*

34. Plaintiff telephoned Bittner in an effort to investigate his eligibility under the Plan.

35. On July 20, 1999, in response to a telephone conversation with Plaintiff the previous day, Bittner wrote to Plaintiff explaining that Mrs. Lowe had elected a single life annuity which "means she would receive a benefit for her lifetime only." MH 123. Bittner enclosed a copy of the executed form which contains the signatures of Plaintiff and his wife dated November 23, 1992. MH 137. This document appears identical to the form found by

Plaintiff in his wife's papers with one major exception: the form from Bittner contains a check next to the single life option, whereas his form did not. Compare MH 137 and Complaint Ex. 1.

36. On July 24, 1999, Plaintiff wrote to Bittner and made an itemized request for information from the Plan Administrator. MH 124. Requested items include:

> a. A copy of the pension plan, including payment benefits and rights.
> b. The signed documents which initiated Geneva Lowe's benefit payments.
> c. A signed copy of the Social Security Leveling option
> d. A copy of the document(s) referred to by Social Security indicating a payment due to Geneva Lowe's spouse.

*Id.* In addition, Plaintiff pointed out that the election form has conflicting check marks. *Id.* This was a reasonable request by a surviving spouse seeking basic information in order to determine his rights under the Plan.

37. Plaintiff received none of the documents requested in his letter of July 24, 1999 by September 11, 1999. MH 125. Defendants failed to provide a reasonable explanation for this inaction. Defendants failed to extend Plaintiff the simple courtesy of asking whether he would pay for the copying costs. Instead, they gave him the cold shoulder.

38. On September 11, 1999, Plaintiff again requested the Plan Administrator to send him the documents he previously requested. MH 125. In addition, he informed the Plan Administrator that if the matter was not resolved by November 30, 1999, he would seek legal advice. *Id.*

39. Plaintiff received no response to his letter of September 11, 1999. Once again, the Plan Administrator failed to provide a reasonable explanation for this inaction.

40. Plaintiff then contacted the U. S. Department of Labor to seek assistance in obtaining copies of the Plan and other related documents.

41. On November 15, 1999, Jonathan Kay, Acting Regional Director for the U.S. Department of Labor, Pension and Welfare Benefits Administration, sent Jana Bittner a request for the Summary Plan Description and a copy of the agreement by which the Lowes accepted the single life annuity. MH 126.

42. On February 29, 2000, Jana Bittner sent Jonathan Kay the Summary of the Plan he had requested along with the election form executed by the Lowes. MH 127.

### F.   THE LITIGATION

43. On January 4, 2001, Plaintiff filed a *pro se* Complaint for Declaratory Judgment against Defendants. PX 2. On May 24, 2001, Judge Suzanne B. Conlon entered a default judgment order. On June 4, 2001, Judge Conlon denied Defendants' motion to set aside default.

44. On July 24, 2001, Plaintiff finally received a copy of the Plan documents in anticipation of a possible settlement conference. Ltr. dated 7/24/01 from Cathryn E. Albrecht, counsel for Defendants, to Plaintiff included in PX 1.

45. Plaintiff contacted at least fifteen attorneys before finding an attorney to assist him in this case.

46. Defendants were aware that the election form in their possession did not comply with the Plan because the signatures were neither notarized nor witnessed. Section 6.01(a) of the Plan provides in relevant part:

9

> An election by a Participant not to take the Qualified Joint and Survivor Annuity shall become effective on the date the Participant's spouse provides written consent to the election, witnessed by a representative of the Plan Administrator or a notary public, in which the effect of the Participant's election is acknowledged.

MH 42.

47. Despite knowing that the election was not properly prepared, the Defendants did not discuss this matter with the prior SRA plan administrator until after suit was filed. Defendants confirmed that proper procedures were not followed and as a result Plaintiff did not waive his right to collect pension benefits. Defendants' Answer to Request to Admit 30. Defendants acted in bad faith in their refusal to provide Plaintiff with basic Plan documents.

### G. GEORGE LOWE'S ENTITLEMENT TO SURVIVOR BENEFITS

48. Plaintiff is a beneficiary under the Plan. Plan ¶ 1.10. MH 18.

49. George Lowe's monthly survivor pension benefit is properly calculated at $277.92, as demonstrated by the calculations contained in DX 1 as follows:

| Geneva Lowe's Annual Compensation | |
| --- | --- |
| 1992 | $26,564.22 |
| 1991 | $25,708.56 |
| 1990 | $24,966.00 |
| 1989 | $24,227.80 |
| 1988 | $23,926.60 |
| Total | $125,393.18 |
| Average Annual Compensation: Total ÷ by 5 | $25,078.64 |

10

|   |   |
|---|---|
| Average Annual Compensation times 1.35% factor | $338.56 |
| times years of credited service | 23.92 |
| = unadjusted benefit | $8,098.36 |
|   |   |
| times early retirement factor | 86% |
| annual annuity calculation | $6,964.59 |
| per month | $580.38 |
|   |   |
| times age adjustment factor (extrapolating from table A, MH 84, + 0.5% because beneficiary is one full year older than participant) | 95.77% |
|   | $555.83 |
| times 50% Survivor Benefit | 50% |
|   |   |
| **SURVIVOR MONTHLY BENEFIT** | **$277.92** |

## II. CONCLUSIONS OF LAW

### A. JURISDICTION

The SRA Plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). ERISA provides for a civil action to be brought by a beneficiary of a qualified benefit plan to recover benefits due to him under the terms of the plan, to enforce his rights under the plan, to redress violations, to enforce any provisions of the terms of the plan, and to obtain other appropriate equitable relief. 29 U.S.C. § 1132. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as a question of federal law raised under ERISA.

## B. MACMILLAN'S DUTY TO GEORGE LOWE

ERISA provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate. . . ." 29 U.S.C. § 1109(a). ERISA requires a fiduciary to discharge its duties respecting a plan "solely in the interest of the participants and beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996); 29 U.S.C. § 1104(a)(1). A fiduciary's duty extends through every dealing with a beneficiary to the plan. *Healy v. Axelrod Constr. Co. Defined Ben. Pension Plan & Trust*, 787 F.Supp. 838, 844 (N.D.Ill. 1992).

McGraw-Hill is a fiduciary with respect to the SRA Plan, as it exercises discretionary authority and control respecting management and administration of the SRA Plan. 29 U.S.C. § 1002(21)(A). Its failure to pay benefits to Plaintiff when they became due was a breach of fiduciary duty. *See Healy*, 787 F.Supp. at 844. Not only does ERISA vest courts with the ability to require payment of past due amounts, courts have discretion to award prejudgment interest. *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696-97 (7th Cir. 1991). Therefore, Plaintiff has a right under ERISA to collect the amount owed to him, and it is within the Court's discretion to also award prejudgment interest. The Court awards Plaintiff interest at the current prime rate of 4.25% per annum for each late monthly payment until the final judgment is entered.

## C. COMPUTING THE SURVIVOR'S BENEFIT OWED TO GEORGE LOWE

### 1. The Severance Pay Is Not Annual Compensation Within the Meaning of the Plan.

Plaintiff asserts that the payment to Geneva Lowe of $24,440 upon her severance from her employer should be included in her annual compensation for 1992 for the purpose of computing the average annual salary between 1988 and 1992. The question is whether a one-time payment upon severance constitutes annual compensation under Plan ¶ 1.07. The Court holds that it is not because a one-time severance payment is more akin to a retirement payment, a special award, or a vacation benefit, which is excluded from the definition of annual compensation, than it is to commissions, overtime and shift premium payments which are included in the definition of annual compensation. Overtime and shift premium payments can recur; a retirement payment, a vacation benefit, a special award, and a severance payment do not recur.

This reading of Plan ¶ 1.07 was the understanding of the SRA plan administrator. On January 26, 1993, only two months after the parties entered into the termination agreement, the SRA Plan administrator computed Geneva Lowe's retirement payments based on her average annual compensation, which did not include the severance payment made to Geneva Lowe on her termination. MH 93. There is nothing in the record to suggest that Geneva Lowe ever objected to this method of computation in over five years of receiving payments.

### 2. The "Five Years" Is Solely to Determine Eligibility.

The next issue is the meaning of the paragraph in the termination agreement that adds "five years . . . in any combination" to a participant's age or length of service "for purposes

13

of computing eligibility." MH 3. The amount of benefits paid under the Plan depends on credited service and age upon retirement. Plan ¶ 5.02. MH 36. Plaintiff contends that the provision in the termination agreement means that once the approximately thirteen months are added to Geneva Lowe's age to make her eligible for early retirement, the rest of the five years must be added to her credited service in order to determine the amount of her benefits.

The Court need not look beyond the language of the contract when that language is unambiguous. *Palda v. General Dynamics Corp.*, 47 F.3d 872, 874 (7th Cir. 1995). The provision at issue here specifically states that the added years are to be used "for purposes of computing eligibility," not the amount of benefits, and it is not ambiguous. MH 3.

Plaintiff's expert, Arthur Tepfer ("Tepfer"), contends that if "additional service were not intended to be granted [for purposes of computing the amount of benefits], then the agreement would be useless." PX3 at 2. The Court disagrees. In some cases, all five years will be used in combination across credited service and age. For example, if a 53 year old employee had 12 years of service credit, she would need two of the five bonus years to apply to her age and three years applied to credited service in order to be eligible. Once an employee meets the threshold of eligibility, the amount of the benefit is to be paid "in accordance with the SRA Retirement Plan." MH 3. The SRA Retirement Plan awards a differing amount of benefits based on actual age and service. Plan ¶ 5.02. MH 36.

## C. STATUTORY PENALTY FOR NOT PROVIDING INFORMATION

29 U.S.C. § 1024(b)(4) requires Plan administrators to provide certain information, including summary plan descriptions and annual return/reports, to participants or beneficiaries. If the administrator does not provide the information within thirty days, he risks liability for statutory penalties under 29 U.S.C. § 1132(c)(1). The imposition of a penalty for violation of § 1132(c)(1) is discretionary on the part of the district court. *Harsch v. Eisenberg*, 956 F.2d 651, 662 (7th Cir. 1992). The size of the penalty imposed is also discretionary, up to $100 per day. 29 U.S.C. § 1132(c)(1).

In order to trigger the discretionary power to impose statutory penalties under § 1132(c)(1), a participant needs to establish that the administrator was required by ERISA to make available the information the participant requested, that the participant requested the information, and that the administrator failed to provide the information. *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir. 1987). The statutory penalty runs from thirty days after the request was made until the participant receives the requested information. See *Hess v. Hartford Life & Accident Ins. Co.*, 91 F.Supp. 2d 1215, 1225 (C.D.Ill. 2000).

Although the award of a statutory penalty under § 1132(c) is entirely discretionary, the purpose of the penalty is to induce plan administrators to respond to requests timely, not to penalize. *Jackson v. E. J. Brach Corp.*, 937 F. Supp. 735, 741 (N.D. Ill. 1996). The court considers several factors in making an award: the conduct and intent of the administrator, the length of delay, the number of requests made, the number of documents withheld, and the

existence of any prejudice to the participant or beneficiary. See *id.*; *Ziaee v. Vest*, 916 F.2d 1204, 1210-11 (7th Cir. 1990) (holding that in exercise of its discretion court may consider factors such as number of requests made and number of documents withheld).

Plaintiff requested information regarding Geneva Lowe's pension plan several times and was not provided the information he requested until two years later, after he had filed a lawsuit. Defendants withheld that information despite repeated, specific requests. A statutory penalty in the amount of $50 per day, beginning from thirty days after his initial request on July 24, 1999 (August 23, 1999) through July 24, 2001, when the documents were finally provided to Plaintiff will be awarded because the Defendants were unjustified in withholding basic Plan documents to a surviving spouse. Defendants were aware that the election form in their possession was not proper and there was no justification for requiring Plaintiff to file suit to obtain the Plan documents. See *Hess*, 91 F. Supp. 2d at 1227 (imposing $50.00 per day fine when administrator "demonstrated remarkably bad judgment and apathy toward satisfying it unequivocal obligations").

### D. ATTORNEY'S FEES

ERISA vests courts with discretion to award reasonable attorney's fees and costs to a beneficiary prevailing in an action involving delinquent contributions. 29 U.S.C. § 1132(g)(1). Courts have applied two tests to determine whether the prevailing plaintiff deserves an award of attorney's fees. *Quinn v. Blue Cross and Blue Shield Ass'n.*, 161 F.3d 472, 478 (1998). The first test involves five factors:

> (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Id.* The second test looks to whether or not the losing party's position was "substantially justified." *Id.*

Under either test, Plaintiff is entitled to an award of attorney's fees. Defendants offered no legitimate defense of their dilatory behavior. Defendants' position was not substantially justified. This Court further finds that the defendant acted in bad faith by ignoring plaintiff's repeated requests for information about the Plan. Defendants' behavior indicates that they may not have sent the information at all if Plaintiff had not filed this lawsuit. McGraw-Hill, a large conglomerate, is able to satisfy an award of attorney's fees. Finally, the deterrence effect of an award of attorney's fees and the benefit thereby conferred to future plan participants who may find themselves in Plaintiff's situation are substantial.

The Court has reviewed Plaintiff's petition for reimbursement of attorney's fees and expenses in the amount of $19,274.64 and finds this amount to be eminently reasonable. The hourly rates are reasonable, the services rendered are clear and necessary and the work resulted in an excellent result for Plaintiff. It was only after Plaintiff retained counsel that Defendant finally conceded that Plaintiff was entitled to benefits under the Plan. Plaintiff's counsel has done an excellent job in securing relief for Plaintiff.

## III. CONCLUSION

Plaintiff is entitled to benefits under the Plan. The Plan Administrators acted in bad faith in failing to provide Plaintiff, a surviving spouse, with necessary documents in order that he could determine whether he had rights under the Plan. The Plan Administrators were aware that the election form was not proper yet they continued to refuse to provide Plaintiff with basic documentation. Plaintiff was required to file a *pro se* complaint to obtain relief. This is an appropriate case for the award of penalties and attorney's fees. **It is recommended that judgment be entered in favor of Plaintiff George Lowe and against Defendants The McGraw-Hill Companies Employee Retirement Plans and The McGraw-Hill Companies, Inc. as follows:**

1) for $277.90 per month from March, 1999 through the date of judgment plus prejudgment simple interest of 4.25%, the current prime rate per annum on each payment;

2) for a declaratory judgment that Plaintiff is entitled to $277.90 per month from the Plan from the date of judgment until his death;

3) for a penalty in the amount of $50 per day from August 23, 1999 through July 24, 2001 (701 days) by reason of Defendants' failure to provide Plan documents to Plaintiff (totaling $35,050.00); and

4) for attorney's fees and costs in the amount of $19,274.64 through the date of the evidentiary hearing on November 20, 2002, plus such additional fees incurred through the date of judgment.

In addition, it is recommended that Geneva Lowe, SRA/IBM MacMillan Pension Plan and HRSC-Retirement Plan, S-1 be dismissed as parties to this action.

Respectfully submitted,

*Morton Denlow*
MORTON DENLOW
United States Magistrate Judge

Date: December 11, 2002

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72 (b); 28 U.S.C. 636 (b)(1)(B); *Lorentzen v. Anderson Pest Control,* 64 F.3d 327, 329 (7th Cir. 1995); *The Provident Bank v. Manor Steel Corp.,* 882 F.2d 258 (7th Cir. 1989).

**Copies mailed to:**

Robert E. Haney
Marks, Marks & Kaplan, Ltd.
120 North LaSalle Street
Suite 3200
Chicago, IL 60602
Attorney for Plaintiff

Cathryn E. Albrecht
Brian McCarthy
Jackson Lewis LLP
320 West Ohio Street
Suite 500
Chicago, IL 60610
Attorneys for Defendants